## PRODUCTION CREDIT ASSOCIATION OF MADISON, Plaintiff-Respondent,

v.

## Bruce A. JACOBSON, Dawn L. Jacobson, his wife, Harriet Gretebeck, and Whispering Pine Farm, Inc., Defendants,

## BANK OF DEERFIELD and Deerfield Farmers Cooperative, Defendants-Appellants.

Court of Appeals

*No. 84–1850. Submitted on briefs January 8, 1986.—Decided April 24, 1986.*
(Also reported in 388 N.W.2d 655.)

For the defendants-appellants the cause was submitted on the briefs of *Roy N. Fine* and *Molbreak, Fine & Kingston, S.C.,* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Robert Brill* and *Aulik, Brill & Eustice, S.C.* of Sun Prairie.

Before Gartzke, P.J., Dykman and LaRocque, JJ.

DYKMAN, J. Deerfield Farmers Cooperative and Bank of Deerfield appeal from an order determining Production Credit Association's lien on certain proceeds was superior to appellants' lien, and awarding prejudgment interest on the amount due. The issues are whether the trial court erred by concluding that respondent's lien was superior, by failing to apply the marshaling of assets doctrine, and by awarding prejudgment interest. We conclude that the trial court correctly held that respondent's lien was superior, did not abuse its discretion in refusing to apply the marshaling doctrine, and appropriately awarded prejudgment interest. We therefore affirm.

The trial court made the following findings: From 1978 to 1981, PCA made a series of loans to Jacobson. From 1980 on, each loan included a refinancing of existing balances and new money. In April 1981, Jacobson refinanced $56,000 and borrowed $107,000 in new funds. Jacobson agreed to repay the loan by April 1, 1982 through sale of his 1981 tobacco crop. The crop was planted on July 1, 1981. Between May 20 and June 19, 1981, Jacobson purchased $6,000 in goods and services from the Cooperative for production of the 1981 crop.

Jacobson received a new advance of $25,200 from PCA in September 1981, and executed a security agreement pledging profits from his crops as security. PCA perfected its lien on October 5, 1981.

On October 9, 1981, Jacobson borrowed $6,000 from the Bank of Deerfield to pay the Cooperative's bill and gave the bank a security interest in his 1981 tobacco crop. The bank perfected its security interest on

October 12, 1981. The bank assigned its security interest to the Deerfield Farmers Cooperative.

PCA was paid $107,000 from sale of Jacobson's 1981 crop. The purchaser of the crop made out two additional checks totalling $29,505.64 to PCA, the bank and others. The bank refused to endorse the checks, asserting it had priority as to $6,000.

Appellants do not challenge the trial court's findings of fact.

The trial court awarded the $29,505.64 to PCA. It concluded that PCA's lien had priority because PCA's earlier security interest did not secure obligations due more than six months before the crops became growing crops on July 1, 1981. It refused to apply the marshaling of assets doctrine, and it awarded PCA prejudgment interest on the $29,505.64.

Section 409.312(2), Stats., provides:

> A perfected security interest in crops for new value given to enable the debtor to produce the crops during the production season and given not more than 3 months before the crops become growing crops by planting or otherwise takes priority over an earlier perfected security interest to the extent that such earlier interest secures obligations due more than 6 months before the crops become growing crops by planting or otherwise, even though the person giving new value had knowledge of the earlier security interest.

Appellants argue that they have priority over PCA's interest under sec. 409.312(2), Stats., because their interest was for new value given to enable Jacobson to produce the 1981 crop. Application of a statute to the facts is a question of law, and we need not defer to the trial court's decision. *Keefer v. State Farm Fire*

& *Cas. Co.,* 127 Wis. 2d 41, 44, 377 N.W.2d 632, 633 (Ct. App. 1985).

■

To have priority under the statute, a security interest must be for new value, and must be created to enable the debtor to produce the crops during the current season, so long as it is not given more than three months before the crops become growing crops. Additionally, a prior perfected security interest must have been due more than six months before the crops begin growing.[1]

■

The bank's security interest was not *for* new value to enable Jacobson to produce the 1981 crop. Rather, it was *for* a loan to pay off a preexisting unsecured debt. That the Cooperative was ultimately assigned the bank's security interest does not alter the fact that the security interest was originally given to enable Jacobson to pay off a debt. It is undisputed that the cooperative sold its goods and provided its services on an open, unsecured account. We conclude that appellants' interest was not entitled to priority under sec. 409.312(2), Stats.

Appellants contend that the trial court should have applied the marshaling of assets doctrine to require respondent to recover the amount due from a guarantor.

---

[1] In Meyer, *"Crops" As Collateral For An Article 9 Security Interest and Related Problems,* 15 U.C.C. L.J. 3, 47–48 (1982), the author refers to sec. 9–312(2) as "probably the strangest priority rule in the Code," but concludes: "In summary, the only time one has to be concerned with 9–312(2) is when an obligation is more than six months overdue."

The doctrine of marshaling assets is an equitable remedy, and provides that where a creditor has a lien on or interest in two funds or properties in the hands of the same debtor, and another creditor has a lien on one of the funds or properties, the creditor with two funds to look to will be required to satisfy his or her debt out of the fund which the other creditor cannot reach. *Moser Paper Co. v. North Shore Pub. Co.*, 83 Wis. 2d 852, 860, 266 N.W.2d 411, 416 (1978). However, the doctrine will not be applied to the detriment of a third person with an equity equal or superior to that of the person seeking to invoke the doctrine. *Id.* at 861, 266 N.W.2d at 416. We review decisions in equity for abuse of discretion. *Mulder v. Mittelstadt*, 120 Wis. 2d 103, 115, 352 N.W.2d 223, 228 (Ct.App. 1984).

The trial court determined that because PCA's guaranty was operable only after PCA liquidated all other security (e.g. Jacobson's crop), there was only one fund PCA could look to. The court also determined that the guarantor was a third party having equities equal or superior to those of appellants.

The factual portions of the trial court's determination are not clearly erroneous, and we accept them. Rule 805.17(2), Stats. We agree with the trial court's conclusion that the "two fund" requirement of the marshaling of assets doctrine was not met, and we conclude that the trial court did not abuse its discretion when it compared the equities of the loan guarantor with those of appellants, and found those of the guarantor superior.

Appellants' final contention is that the trial court erred in awarding prejudgment interest because PCA

did not seek, and was not awarded, damages. This is a question of law and we do not defer to the trial court.

*Klug & Smith Co. v. Sommer,* 83 Wis. 2d 378, 384, 265 N.W.2d 269, 272 (1978), held that prejudgment interest may be awarded only if the amount of damages can be ascertained before a judicial determination is made. The result of the trial court's decision is that PCA received a specific ascertainable sum of money. PCA was deprived of the use of the money, plus accrued interest, through the date of judgment. That PCA did not seek "damages" is immaterial. The trial court properly applied *Klug* to allow prejudgment interest.

*By the Court.*—Order affirmed.