CITY OF MADISON, Debra H. Amesqua and the
Madison Board of Police and Fire Commissioners,
Petitioners-Respondents,†

v.

STATE of Wisconsin DEPARTMENT OF WORKFORCE DE-
VELOPMENT, Equal Rights Division, Respondent-
Appellant,

Charles T. WAGNER, Respondent-Co-Appellant.

Court of Appeals

*No. 01–1910. Submitted on briefs January 11, 2002.—Decided
July 25, 2002.*

2002 WI App 199

(Also reported in 651 N.W.2d 292.)

† Petition to review granted 10-21-02.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *David C. Rice*, assistant attorney general.

On behalf of the respondent-co-appellant, the cause was submitted on the briefs of *Charles W. Giesen* of *Giesen Law Offices, S.C.* of Madison.

On behalf of the petitioners-respondents, the cause was submitted on the briefs of *Steven C. Zach* of *Boardman, Suhr, Curry & Field LLP* of Madison.

Brief of amicus curiae was filed by *Bruce F. Ehlke* of *Shneidman, Hawks Ehlke, S.C.* of Madison on behalf of *Firefighters Local 311 and Joseph Conway, Jr.*

Brief of amicus curiae was filed by *Claire Silverman* of *League of Wisconsin Municipalities* of Madison on behalf of *League of Wisconsin Municipalities.*

Before Vergeront, P.J., Roggensack and Deininger, JJ.

¶ 1. ROGGENSACK, J. The City of Madison's Police and Fire Commission (PFC) ordered the discharge from service of city firefighter Charles Wagner

after it sustained charges that Wagner violated several fire department rules. Following his discharge, Wagner filed a complaint with the Department of Workforce Development (DWD) alleging that he was unlawfully terminated based on his arrest and conviction record, in violation of the Wisconsin Fair Employment Act (WFEA). The City of Madison, the PFC and the City's fire chief jointly petitioned the circuit court for a writ of prohibition, seeking to terminate DWD's investigation of Wagner's WFEA complaint. The circuit court granted the writ, concluding that matters involving the discharge of city firefighters are to be determined exclusively under WIS. STAT. § 62.13(5) (1999–2000)[1] and that claim preclusion also barred the proceedings before DWD. We unanimously conclude that as to the City and the fire chief, DWD has statutory authority to receive and investigate Wagner's WFEA complaint, to which claim preclusion is no bar. As to the PFC, two members of the court would not decide whether DWD has authority over the PFC at this point in the litigation, while I would conclude that DWD has no statutory authority over the PFC for actions it took. Therefore, this court reverses the order of the circuit court as to all parties.

## BACKGROUND

¶ 2. Wagner began working for the City as a firefighter in 1993. In January 1997, a criminal complaint was filed against him alleging theft and fraud in connection with merchandise that was alleged to have been stolen in 1992. The acting chief of the Madison Fire Department, Fred Kinney, suspended Wagner with

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

pay pending resolution of the criminal charges. In November 1997, Wagner was convicted of one count of misdemeanor theft pursuant to an *Alford*[2] plea.

¶ 3. Fire Chief Debra Amesqua then filed a statement of charges with the PFC that alleged eight counts of department rule violations, some of which related to Wagner's admitted theft. Amesqua recommended that the PFC terminate Wagner's employment. The PFC held an evidentiary hearing at which Wagner was represented by counsel, and it determined, pursuant to Wis. Stat. § 62.13(5)(em), that there was just cause to sustain the charges as alleged in Counts 1, 2 and 8.[3] The PFC dismissed the remaining counts. As a penalty for committing the rule violation of conducting himself so as to bring disrepute on the department (Count 8), the PFC ordered Wagner's discharge from service. As a "separate and distinct" penalty for violating department

---

[2] *North Carolina v. Alford*, 400 U.S. 25 (1970).

[3] Counts 1 and 2 alleged the theft that led to Wagner's criminal conviction, as well as various misrepresentations associated with the theft that Wagner made to a third party. The PFC found that Wagner both committed the theft and misrepresented related circumstances. The PFC further determined that this conduct violated rules requiring members of the department to observe all laws and to speak the truth at all times. Although the conduct relevant to Counts 1 and 2 occurred prior to Wagner's employment with the City, the charges alleged that if the conduct had been disclosed at the time of his application, Wagner would not have been hired.

Count 8 alleged that Wagner's status as a convicted thief violated a rule requiring that members of the department "conduct themselves so as not to bring the Department in disrepute." The PFC determined that Wagner's conviction "is damaging to the Department's reputation and constitutes on its face a violation of Rule 51."

rules against theft and dishonesty (Counts 1 and 2), the PFC also ordered discharge from service. The City then terminated Wagner's employment.

¶ 4. Wagner appealed to the circuit court.[4] The circuit court dismissed the action because Wagner had not properly commenced it, and we affirmed the dismissal.[5] After the circuit court dismissed Wagner's statutory appeal, he filed a discrimination complaint with DWD, naming the City of Madison, Amesqua—in her official capacity as fire chief—and the PFC as respondents. Wagner alleged that his suspension and discharge from service were unlawful because they were based on his arrest and conviction record, in violation of WIS. STAT. §§ 111.321 and 111.335.

¶ 5. The respondents asserted that DWD lacked jurisdiction over Wagner's complaint and that claim preclusion or issue preclusion barred his WFEA claim. DWD disagreed, stating that it intended to investigate Wagner's complaint and that the respondents could raise the other "jurisdictional issues" later.

¶ 6. In response, the City, Amesqua and the PFC petitioned the circuit court for a writ of prohibition to terminate DWD's investigation. The parties provided the circuit court with stipulated facts and exhibits, and the circuit court granted the writ. It concluded that matters involving the discharge of city firefighters are

---

[4] Pursuant to WIS. STAT. § 62.13(5)(i), the circuit court has the power to review the record that was before the PFC and, giving deference to the PFC's findings and credibility determinations, decide whether there was just cause to sustain the charges. *See Younglove v. City of Oak Creek Fire & Police Comm'n*, 218 Wis. 2d 133, 141, 579 N.W.2d 294, 297 (Ct. App. 1998).

[5] *Wagner v. Madison Bd. of Police & Fire Comm'rs*, No. 00–3097, unpublished slip op. (WI App Aug. 16, 2001).

to be determined exclusively under the procedures set forth in WIS. STAT. § 62.13(5) and that claim preclusion barred the proceedings before DWD because Wagner could have litigated his discrimination claim before the PFC.[6] DWD and Wagner appeal.

## DISCUSSION

### Standard of Review.

¶ 7. Our analysis of the circuit court's decision to issue the writ entails questions of statutory interpretation affecting DWD's authority to proceed, which are questions of law that we review *de novo. See State ex rel. DPI v. DILHR*, 68 Wis. 2d 677, 680–84, 229 N.W.2d 591, 593–95 (1975); *State ex rel. St. Michael's Evangelical Lutheran Church v. DOA*, 137 Wis. 2d 326, 335, 404 N.W.2d 114, 118 (Ct. App. 1987). However, whether a circuit court should issue a writ of prohibition is a discretionary decision. *St. Michael's*, 137 Wis. 2d at 330, 404 N.W.2d at 116. We will sustain the discretionary decision to issue a writ unless the circuit court based it on an error of fact or law. *See State ex rel. Wis. Employers Ins. Co. v. Ins. Comm'r*, 122 Wis. 2d 668, 670, 363 N.W.2d 585, 586 (Ct. App. 1985). Whether governmental immunity applies is a question of law. *See Kimps v. Hill*, 200 Wis. 2d 1, 8, 546 N.W.2d 151, 155 (1996).

---

[6] Other grounds for the writ that the City, the PFC and Amesqua briefed and argued before the circuit court were (1) that the respondents named in Wagner's WFEA complaint were all shielded by immunity from suit; and (2) that the PFC, when acting under WIS. STAT. § 62.13(5), was not Wagner's "employer" within the meaning of WFEA.

**Writ of Prohibition.**

■

¶ 8. A writ of prohibition is an extraordinary remedy available to courts as part of their supervisory jurisdiction over inferior tribunals. *State ex rel. Lynch v. County Court,* 82 Wis. 2d 454, 459, 262 N.W.2d 773, 775 (1978). A circuit court may exercise its supervisory authority over a state agency to prevent the agency from exceeding its statutory authority. *See State ex rel. DPI,* 68 Wis. 2d at 687, 229 N.W.2d at 597; *St. Michael's,* 137 Wis. 2d at 335, 404 N.W.2d at 118. A writ of prohibition will issue "[o]nly where the duty of the court below is plain, and where there is a clear refusal to meet that duty or a clear intent to disregard it." *State ex rel. Lynch,* 82 Wis. 2d at 459, 262 N.W.2d at 775.

■

¶ 9. In addition to establishing error by the inferior tribunal, the petitioning party has the burden of showing (1) that ordinary remedies, by appeal or otherwise, are inadequate, and (2) that grave or extraordinary hardship will result if the writ does not issue. *Id.* at 460, 262 N.W.2d at 776. In some cases, however, the inadequacy of ordinary remedies and the gravity of the harm will be "inherent in the situation." *State ex rel. DPI,* 68 Wis. 2d at 687, 229 N.W.2d at 597 (concluding under a prior version of WFEA that DILHR had no authority to proceed upon a sex-discrimination complaint filed by an employee of a state agency and that the circuit court's failure to issue a writ of prohibition in such circumstances was an erroneous exercise of discretion due to the harm inherent in the situation).

**Statutory Interpretation.**

¶ 10. We begin our examination of the writ issued by the circuit court by interpreting WIS. STAT. § 62.13(5) and WFEA statutes that are claimed to be in conflict. Where two statutes relate to the same factual occurrences and can reasonably be read to conflict with one another, we are required to construe the statutes together and, to the greatest extent possible, harmonize them to achieve the results intended by the legislature. *See Gordie Boucher Lincoln-Mercury Madison, Inc. v. City of Madison Plan Comm'n*, 178 Wis. 2d 74, 89–90, 503 N.W.2d 265, 270 (Ct. App. 1993); *Cornell Univ. v. Rusk County*, 166 Wis. 2d 811, 819–20, 481 N.W.2d 485, 489 (Ct. App. 1992). In harmonizing conflicting statutes, we will attempt to reach a construction that gives effect to the purpose of each statute and to avoid constructions that lead to absurd results. *See Peters v. Menard, Inc.*, 224 Wis. 2d 174, 189, 589 N.W.2d 395, 403 (1999); *Byers v. LIRC*, 208 Wis. 2d 388, 395, 561 N.W.2d 678, 681 (1997).

¶ 11. Wagner has made a claim under WFEA, which generally prohibits termination from employment because of an employee's conviction record. WIS. STAT. §§ 111.321 and 111.335. Wagner was terminated, at least in part, due to his conviction record. However, termination of employment for a criminal conviction is not unlawful if the circumstances of the conviction are substantially related to the circumstances of the employment. Section 111.335(1)(c)1. Therefore, we must decide if DWD can investigate and decide whether the circumstances of Wagner's theft conviction are substantially related to the circumstances of his job as a firefighter, or if the just cause determination made by

the PFC pursuant to Wis. Stat. § 62.13(5) precludes further investigation of Wagner's WFEA claim.

### 1. Wis. Stat. § 62.13(5) overview.

¶ 12. Wisconsin Stat. § 62.13(5) sets forth the procedures and standards that a PFC[7] is to apply in disciplinary actions against city police officers and firefighters.[8] The purpose of § 62.13(5) is to protect against and provide a remedial process for the wrongful discipline of firefighters. *Larson v. City of Tomah*, 193 Wis. 2d 225, 232, 532 N.W.2d 726, 729 (1995). And, pursuant to § 62.13(12), the legislature intends that § 62.13(5) "be construed as an enactment of statewide concern for the purpose of providing a uniform regulation of police and fire departments."

¶ 13. If a PFC sustains the disciplinary charges brought against a firefighter, it has the authority to remove the firefighter from service. *See* Wis. Stat. § 62.13(5)(e). The standards that a PFC applies in making its decision are set forth in § 62.13(5)(em). A firefighter may appeal a PFC's decision to the circuit court for review of the record that was before the PFC.[9] Here, we have previously affirmed the circuit court's

---

[7] Wisconsin Stat. § 62.13(1) requires cities with a population of 4000 persons or more to establish a PFC.

[8] In the remainder of the opinion, we refer only to firefighters. However, we do so with the understanding that the statute applies to police officers as well.

[9] Wisconsin Stat. § 62.13(5)(i) establishes the scope of judicial review of a PFC's disciplinary decision. In relevant part, § 62.13(5)(i) provides:

> The question to be determined by the court shall be: Upon the evidence is there just cause, as described under par. (em), to sustain the charges against the accused? . . . . If the order of the

dismissal of Wagner's statutory appeal of the proceedings before the PFC. Accordingly, the PFC's findings and legal conclusions are conclusive.

### 2. WFEA overview.

■■■■

¶ 14. The purpose of WFEA differs from that of WIS. STAT. § 62.13(5) because WFEA seeks to identify, remedy and deter discriminatory conduct by employers. *See Byers*, 208 Wis. 2d at 396–97, 561 N.W.2d at 681–82. The remedies available under WFEA are intended not only to compensate the victims of discrimination, but also to eliminate discriminatory workplace environments that are harmful to the entire workforce and the public welfare. *Id.* In enacting WFEA, the legislature created statutory rights and statutory remedies. *Bachand v. Connecticut Gen. Life Ins. Co.*, 101 Wis. 2d 617, 623–24, 305 N.W.2d 149, 152 (Ct. App. 1981). In so doing, the legislature established DWD as the only state body with authority to receive, investigate, hear and determine a city employee's employment discrimination complaint. *See* WIS. STAT. § 111.375. Accordingly, a city employee must pursue WFEA remedies for unlawful discrimination, at least initially, through DWD. *See Bachand*, 101 Wis. 2d at 624, 305 N.W.2d at 152.

### 3. Parties subject to WFEA.[10]

¶ 15. In order for DWD to have statutory authority to investigate and decide a WFEA claim, the claim must be made against one of the persons or entities

---

board is reversed, the accused shall be forthwith reinstated and entitled to pay as though in continuous service. If the order of the board is sustained it shall be final and conclusive.

[10] This section represents the views of Judge Roggensack, not that of the court.

362

specified in WIS. STAT. § 111.321, for an act of employment discrimination. Section 111.321 states in relevant part:

> [N]o employer, labor organization, employment agency, licensing agency or other person may engage in any act of employment discrimination . . . on the basis of . . . conviction record . . . .

There is no dispute that the City was Wagner's employer and that Amesqua, in her official capacity as fire chief, acted on behalf of the City when she filed charges against Wagner. The dispute relative to those two parties turns on whether filing charges and terminating Wagner were acts of employment discrimination. However, the PFC's role has been quite different in that it did not employ Wagner, *see* WIS. STAT. § 111.32(6); *see also Moore v. LIRC*, 175 Wis. 2d 561, 569, 499 N.W.2d 288, 291 (Ct. App. 1993), or act as an agent of the City when it performed its disciplinary function under WIS. STAT. § 62.13(5). *See Eau Claire County v. General Teamsters Union Local No. 662*, 228 Wis. 2d 640, 650, 599 N.W.2d 423, 428 (Ct. App. 1999) ("The PFC is comprised of citizen members who have no direct interest in the outcome of the case as would a party to the dispute. Member appointment is designed so as to prevent the commission from operating as an agent of a city officer or police chief."), *aff'd,* 2000 WI 57, 235 Wis. 2d 385, 611 N.W.2d 744.

¶ 16. However, what is not immediately apparent is whether a PFC falls within the meaning of "other person" or whether it could "engage in any act of employment discrimination" under WIS. STAT. § 111.321 when it acts pursuant to the legislature's directive under WIS. STAT. § 62.13(5). I conclude that the legisla-

ture did not intend a PFC to be an "other person" under WFEA when a PFC performs the functions the legislature requires of a PFC under § 62.13(5) in a disciplinary proceeding. I further conclude that performing those functions is not "engag[ing] in any act of employment discrimination" pursuant to § 111.321 because a PFC does not order discharge for a prohibited reason under § 111.322, but rather, for the violation of department rules.

¶ 17. First, the procedures the PFC employed to address the charges that Wagner violated department rules were those established by the legislature. *See* WIS. STAT. § 62.13(5)(d)-(i). The PFC was required to, and did, hold a public hearing at which Wagner was represented. *Id.* At the hearing, the PFC sought information to determine whether "there is just cause" to sustain the charges that Wagner violated department rules.[11] Section 62.13(5)(em). In so doing, it considered the following criteria mandated by the legislature:

1. Whether the subordinate could reasonably be expected to have had knowledge of the probable consequences of the alleged conduct.

2. Whether the rule or order that the subordinate allegedly violated is reasonable.

[11] One of the department rules the PFC found just cause to conclude that Wagner violated was a firefighter's obligation to obey all laws. One could argue that if that department rule conflicts with WFEA, it could not be "reasonable" under WIS. STAT. § 62.13(5)(em)2. However, that argument is not before us because this is not an appeal of the PFC's decision. That argument also potentially conflicts with prior decisions, such as *Bachand v. Connecticut Gen. Life Ins. Co.*, 101 Wis. 2d 617, 305 N.W.2d 149 (Ct. App. 1981), that require WFEA claims to proceed initially through DWD.

3. Whether the chief, before filing the charge against the subordinate, made a reasonable effort to discover whether the subordinate did in fact violate a rule or order.

4. Whether the effort described under subd. 3 was fair and objective.

5. Whether the chief discovered substantial evidence that the subordinate violated the rule or order as described in the charges filed against the subordinate.

6. Whether the chief is applying the rule or order fairly and without discrimination against the subordinate.

7. Whether the proposed discipline reasonably relates to the seriousness of the alleged violation and to the subordinate's record of service with the chief's department.

*Id.* Wagner does not contend that the PFC did anything other than follow the mandate of the legislature set out in § 62.13(5). Additionally, while the legislature's statutory formation of police and fire commissions preceded WFEA by many years, there is nothing in WFEA or in ch. 62 to indicate that a statutory claim for relief against a PFC exists when it is performing the disciplinary functions set out in § 62.13(5). Therefore, I cannot conclude that at the same time the legislature required the PFC to perform the functions it did here, the legislature also gave Wagner a statutory claim against the PFC for performing those required functions.

¶ 18. Second, Wis. Stat. § 62.13(5) grants firefighters extensive due process protections in disciplinary actions, including the right to a public hearing, the right to be represented by an attorney, the right to subpoena witnesses and the right to seek judicial review of an adverse PFC decision. *Eau Claire County*, 2000 WI 57 at ¶ 36; *see also* § 62.13(5)(i). A PFC is also required to reduce its findings and conclusions to writing, which facilitates a meaningful review. *See* § 62.13(5)(f). Absent some other clear directive by the legislature, these legislatively established procedures evidence an exclusive process for examining the acts of a PFC under § 62.13(5).

¶ 19. Third, the PFC is not a necessary party to Wagner's complaint that he was terminated for an impermissible reason under WFEA. The City is his employer, and if the department rule is found to be unenforceable because honesty is not substantially related to a firefighter's employment, the City can be ordered to reinstate him. *See Knight v. LIRC*, 220 Wis. 2d 137, 582 N.W.2d 448 (Ct. App. 1998).

¶ 20. Fourth, whether a conviction for theft and the misrepresentations associated with the theft are substantially related to the circumstances of Wagner's employment is a direct attack on the department rule that a firefighter must obey all laws. However, the PFC was asked to decide only whether department rules were violated, and it concluded there was just cause to uphold the charges that Wagner violated those rules. Accordingly, the PFC did not order Wagner's termination for a prohibited reason under Wis. Stat. § 111.322, *i.e.,* a criminal conviction that was not substantially related to his employment. But rather, the PFC ordered Wagner's termination because of its conclusion that there was just cause to support the charges that he

violated department rules. Therefore, for the reasons set out above, I conclude that a PFC is not a person engaged in an act of employment discrimination within the scope of WFEA when it performs the disciplinary functions established by the legislature in WIS. STAT. § 62.13(5). It follows that DWD has no statutory authority to investigate and decide Wagner's claims against the PFC. *See State ex rel. DPI*, 68 Wis. 2d at 687, 229 N.W.2d at 597. Accordingly, I would affirm the issuance of the writ as to the PFC. Judges Vergeront and Deininger disagree with this conclusion for the reasons set out in the attached concurrence.

### 4. Harmonizing WIS. STAT. § 62.13(5) and WIS. STAT. § 111.321.

¶ 21. We next address the interplay between WIS. STAT. § 62.13(5) and WIS. STAT. § 111.321 for Wagner's WFEA claims against the City and Amesqua (hereinafter below "the City"). Painting with a fairly broad brush, the City contends that the legislative scheme established by § 62.13(5) requires the conclusion that WFEA does not apply to discrimination claims arising out of disciplinary decisions involving a prior "just cause" determination by a PFC. The City argues that a firefighter can adequately assert his or her rights under WFEA in § 62.13(5) proceedings. The City further argues that allowing a firefighter to pursue a WFEA claim with DWD after a "final and conclusive" § 62.13(5) proceeding opens the door to the possibility that a PFC would order the discharge of a firefighter in one proceeding while DWD would order the reinstatement of that same employee in another.

¶ 22. DWD and Wagner contend that the City's claim that WIS. STAT. § 62.13(5) is the exclusive provision for matters involving suspension and discharge

must give way when the disciplined firefighter presents a claim that the disciplinary action was tainted by unlawful employment discrimination. DWD responds to the City's concerns about potentially conflicting orders by noting that the doctrine of issue preclusion and other defenses may affect both the scope of Wagner's WFEA claims and the scope of the remedies that would be appropriate if any discrimination were proven.

¶ 23. We disagree with the City's contention that the only way to give effect to WIS. STAT. § 62.13(5) is to conclude that DWD lacks statutory authority over Wagner's WFEA claims. Rather, in cases such as this one where a firefighter's employment discrimination claim is tied directly to the charges sustained and disciplinary sanctions imposed by a PFC, we conclude that the legislature's intent in enacting § 62.13(5) can be given effect by the filing of motions with DWD (*e.g.,* failure to state a claim or issue preclusion). *See, e.g., Jocz v. LIRC,* 196 Wis. 2d 273, 284, 538 N.W.2d 588, 590 (Ct. App. 1995) (concluding that although LIRC had statutory authority to receive and investigate a WFEA complaint against a religious seminary, LIRC had properly dismissed the complaint because the department was constitutionally precluded from enforcing WFEA against the seminary).

¶ 24. The City also argues that our decision in *City of Janesville v. WERC,* 193 Wis. 2d 492, 535 N.W.2d 34 (Ct. App. 1995), demonstrates previous recognition of WIS. STAT. § 62.13(5) exclusivity over the issues set forth in Wagner's WFEA complaint. We disagree.

¶ 25. In *City of Janesville,* a police union proposed a change to the collective bargaining agreement that would have allowed officers disciplined by the city's

PFC to obtain review of the just cause determination through arbitration. *City of Janesville*, 193 Wis. 2d at 496–97, 535 N.W.2d at 36–37. We held that the legislature intended the statutory appeal provided by Wis. Stat. § 62.13(5)(i) to be the exclusive remedy for challenging the disciplinary decisions of a PFC, and therefore, arbitration of the same dispute could not proceed. *Id.* at 504, 507–08, 535 N.W.2d at 39, 41. However, DWD is not proposing either that it redetermine the issue of whether there was just cause to sustain the charges that led to Wagner's dismissal or that it review the penalty imposed by the PFC. In refusing to immediately dismiss Wagner's action, DWD is merely recognizing its statutory authority to receive and act on a complaint that alleges employment discrimination. Accordingly, for the reasons explained above, we conclude that Wagner's claims under WFEA do not conflict with the determination previously made by the PFC under § 62.13(5).

**Collateral Issues.**

¶ 26. The City raises three other collateral issues that we address in an attempt to further clarify the proceedings that will follow this decision: quasi-judicial immunity, claim preclusion and issue preclusion.

### 1. Quasi-judicial immunity.

¶ 27. The City's immunity argument was raised before both DWD and the circuit court, but neither DWD nor the circuit court relied on immunity. However, whether there is immunity is a question of law, *Kimps*, 200 Wis. 2d at 8, 546 N.W.2d at 155, and

immunity has been fully briefed as part of this appeal. In addition, DWD would decide the immunity issue on remand, and it has no special expertise in the application of immunity doctrines. Furthermore, we could find no precedent for the granting of an interlocutory appeal from a decision of an administrative agency. Therefore, under these circumstances, we conclude the issue merits a decision now. *See Wal-Mart Stores, Inc. v. LIRC*, 2000 WI App 272, ¶ 15, 240 Wis. 2d 209, 621 N.W.2d 633.

¶ 28. Immunity for acts done in the exercise of quasi-judicial functions has both statutory and common law grounding. *See* Wis. Stat. § 893.80(4);[12] *Kimps*, 200 Wis. 2d at 9–11 & n.6, 546 N.W.2d at 155–56 & n.6. Where applicable, immunity is an absolute defense, defeating the suit at the outset. *Ford v. Kenosha County*, 160 Wis. 2d 485, 498, 466 N.W.2d 646, 651 (1991).

¶ 29. Disciplinary proceedings under Wis. Stat. § 62.13(5) are quasi-judicial proceedings that under some circumstances give rise to statutory govern-

---

[12] Wisconsin Stat. § 893.80(4) provides that

> No suit may be brought against any . . . political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

"Quasi-judicial functions" are synonymous with "discretionary," as opposed to "ministerial," acts. *See Anhalt v. Cities & Villages Mut. Ins. Co.*, 2001 WI App 271, ¶ 11, 249 Wis. 2d 62, 637 N.W.2d 422.

mental immunity. *See Salerno v. City of Racine*, 62 Wis. 2d 243, 214 N.W.2d 446 (1974) (holding that a municipality has immunity under WIS. STAT. § 895.43(3) (1973)[13] against a claim that the city negligently failed to bring disciplinary charges against a police officer). *Salerno's* holding was stated in broad terms. "From the filing or not filing of charges, through the hearing to the imposition of appropriate penalty, the entire procedure of disciplinary proceedings against police department members is within the scope of the statutory reference to acts done in the exercise of a quasi-judicial function." *Id.* at 249, 214 N.W.2d at 449–50. However, later supreme court precedent explained that WIS. STAT. § 893.80(4), the current version of the municipal immunity statute, is limited to immunity from tort claims. *Willow Creek Ranch, L.L.C. v. Town of Shelby*, 2000 WI 56, ¶¶ 31–34, 235 Wis. 2d 409, 611 N.W.2d 693. In this case, Wagner is not bringing a tort claim, but rather a statutory claim under WFEA. Therefore, the broad language of *Salerno* does not apply, and any immunity that may be available to the City must be grounded in the common law. *See Kurtz v. City of Waukesha*, 91 Wis. 2d 103, 118, 280 N.W.2d 757, 765 (1979) (holding that the legislature has consented to the suit of municipalities for alleged WFEA violations).

¶ 30. The City directs our attention to *Ford*, 160 Wis. 2d 485, 466 N.W.2d 646, and *Paige K.B. v. Molepske*, 219 Wis. 2d 418, 580 N.W.2d 289 (1998). Both cases address immunity for non-judicial officers who perform functions intimately related to the judicial

---

[13] This statute was the predecessor to WIS. STAT. § 893.80(4), the current version of the governmental immunity statute.

process. Both cases are based on common law tort claims, not on statutory claims for relief as Wagner has brought. Wagner's WFEA claim rests upon the City's actions as an employer. The supreme court has held that a municipality is an employer subject to suit under WFEA and that WFEA trumps at least some claims of immunity. *Kurtz*, 91 Wis. 2d at 118, 280 N.W.2d at 765. It is well-settled law that when the legislature enters a field to regulate it, as it has done with the Fair Employment Act, its enactments take precedence over the common law. *See United Catholic Parish Sch. of Beaver Dam Educ. Ass'n v. Card Servs. Center*, 2001 WI App 229, ¶ 20, 248 Wis. 2d 463, 636 N.W.2d 206. Therefore when there is a conflict between legislation and the common law, the legislation controls as the latest expression of the law. *See Kensington Dev. Corp. v. Israel*, 139 Wis. 2d 159, 167, 407 N.W.2d 269, 273 (Ct. App. 1987), *aff'd*, 142 Wis. 2d 894, 419 N.W.2d 241 (1988). Accordingly, we conclude that the common law doctrine of judicial (or quasi-judicial) immunity has no application to Wagner's WFEA claims against the City and Amesqua, in her official capacity.

### 2. Claim preclusion.

¶ 31. The City also argues that claim preclusion prevents DWD from proceeding upon Wagner's complaint. Claim preclusion causes a final judgment to be "conclusive in all subsequent actions between the same parties [or their privies] as to all matters which were litigated or which might have been litigated in the former proceedings." *DePratt v. West Bend Mut. Ins. Co.*, 113 Wis. 2d 306, 310, 334 N.W.2d 883, 885 (1983) (citation omitted). Accordingly, as between the earlier action before PFC and the present action before DWD,

372

identity of claims which were brought or which could have been brought is one of the factors that must be present before claim preclusion can be applied. *See Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 551, 525 N.W.2d 723, 728 (1995).

¶ 32. We conclude that claim preclusion does not apply. Wagner's employment discrimination claim was not and could not have been decided by the PFC in the WIS. STAT. § 62.13(5) disciplinary action because DWD has exclusive jurisdiction over all WFEA claims. *See Bachand*, 101 Wis. 2d at 624, 305 N.W.2d at 152. That Wagner might have raised his claim about a violation of WFEA to thwart a finding that the department's rules were reasonable, or a finding that it was fair to apply those rules to him, demonstrates only that some of the issues in the disciplinary proceedings overlap with the issues that are relevant to his employment discrimination claim.

### 3. Issue preclusion.

¶ 33. In reaching its decision, the PFC found that Wagner's theft conviction and associated conduct violated several department rules, that the rules at issue were reasonable, and that the rules were applied fairly and without discrimination. The supreme court has analyzed the exception to WFEA's prohibition against employment discrimination on the basis of an employee's conviction record and explored the nature of the inquiry required by the exception. *See County of Milwaukee v. LIRC*, 139 Wis. 2d 805, 808, 407 N.W.2d 908, 909 (1987) (holding as a matter of law that the circumstances of the offenses for which the employee had been convicted "substantially related" to the cir-

cumstances of his job with the county). On remand to DWD, the agency may find *County of Milwaukee* instructive in addressing Wagner's claims. Along these lines, we note that issue preclusion may prevent Wagner from relitigating issues that are relevant to his discrimination claim and that were decided in the PFC's analysis of whether there was just cause to sustain the charges against him. However, on the record and briefing now before us, we are unable to determine whether issue preclusion bars Wagner's claims against the City and Amesqua.

## CONCLUSION

¶ 34. We conclude that DWD has statutory authority to receive and investigate Wagner's WFEA complaint, to which claim preclusion is no bar. Therefore, this court reverses the order of the circuit court.

*By the Court.*—Order reversed.

¶ 35. DEININGER, J. (*concurring*). The question before us is whether the circuit court erred in granting the extraordinary remedy of judicially terminating the Department of Workforce Development's investigation of Wagner's complaint of a WFEA violation. All members of the panel conclude that the court erred in terminating the investigation insofar as the City of Madison and Chief Amesqua were named as respondents. Two members of the panel also conclude that the department should not be prohibited from considering whether the Madison Police and Fire Commission was also properly named as a respondent in Wagner's complaint. This concurrence is the opinion of the court majority with respect to the latter issue.

¶ 36. It is not clear what difference it might make if the administrative proceedings on Wagner's allegations were to proceed with only the City and Chief

Amesqua, but not the commission, as named respondents. Perhaps very little, given that the City is Wagner's employer, and most remedies the department might order if Wagner were to prevail would likely fall to the City to pay or implement. The department might also ultimately agree with the commission that it should be dismissed as a respondent for the reasons cited by Judge Roggensack, or for other reasons.

¶ 37. We acknowledge that the department could conceivably order relief that the commission believes adversely affects its interests separately or differently from the City's. A writ of prohibition is a "drastic and extraordinary remedy," however, and a court should not issue a writ unless "ordinary remedies, by appeal or otherwise, are inadequate." *State ex rel. Lynch v. County Court*, 82 Wis. 2d 454, 459–60, 262 N.W.2d 773 (1978). The panel majority concludes that (1) the commission, for the reasons discussed in ¶¶ 29–30 of the lead opinion, does not have immunity from Wagner's WFEA complaint; and (2) the availability of administrative and judicial review of the department's decisions provides adequate protection for the commission's interests.[1]

¶ 38. The commission concedes it would be a proper respondent in a department investigation of a firefighter's claim of WFEA violations relating to "hiring practices, terms or conditions of employment, or adverse employment actions short of" demotions, suspensions or discharge. *See* WIS. STAT. § 62.13(4). Given the nature of the circuit court action under review, it is not necessary for this court to decide whether the commission is or is not a "person" within the meaning of WIS. STAT. § 111.321 when it performs functions under WIS. STAT. § 62.13(5). That issue is best decided, if necessary,

---

[1] *See* WIS. STAT. §§ 111.39(5) and 111.395.

after the department has had the opportunity to complete its investigation and to address the defenses the commission may raise.

¶ 39. I am authorized to state that Presiding Judge Vergeront joins this concurrence.